UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05-CV-90-R

JAMES ADAMS; WALLACE YORK; DORIS YORK;
DEAN RAY; and ANNA RAY on behalf of
themselves and all persons similarly situated                                        PLAINTIFFS

v.

THE FEDERAL MATERIALS COMPANY, INC.;
HANSON AGGREGATES MIDWEST, INC.;
and ROGERS GROUP, INC.                                                               DEFENDANTS

and

THE FEDERAL MATERIALS COMPANY, INC.                      THIRD-PARTY PLAINTIFF

v.

ROGERS GROUP, INC.                                              THIRD-PARTY DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs James Adams, Wallace York, Doris York, Dean Ray, and Anna Ray (herein

referred to collectively as "Plaintiffs") filed a Notice to Certify a Class in this suit (Docket # 55).

This Notice was amended (Docket # 75), and Plaintiffs filed a Memorandum in Support of Class

Certification (Docket # 76).  Defendant and Third-Party Defendant Rogers Group ("Rogers")

filed a Response (Docket # 111).  Defendant and Third-Party Plaintiff The Federal Materials

Company ("Federal") filed its Response (Docket # 112), and Defendant Hanson Aggregates

Midwest ("Hanson") followed with its Response (Docket # 118).  Plaintiffs filed a combined

Reply to Responses by Federal, Rogers, and Hanson (herein referred to collectively as

1

"Defendants") (Docket # 129).  Defendants then filed a joint Sur-reply (Docket # 135).The matter is now ripe for adjudication.  The Court DENIES Plaintiffs' Motion for Class Certification.

## BACKGROUND

This suit arises from Plaintiffs' claims that they have purchased defective concrete. Plaintiffs state that they have purchased ready-mix concrete for use in their residential buildings from Federal.[1]  Plaintiffs allege that one component of the concrete provided by Federal was coarse aggregate purchased from a certain quarry in Princeton, Kentucky (the "Princeton Quarry" or the "Quarry").  The Quarry, during time periods relevant to this suit, was originally owned by Hanson and sold to Rogers.  Plaintiffs claim that regular testing of the Quarry by the Kentucky Department of Transportation found that some rock contained high levels of alkalinity and had a proclivity to react with carbonates.  Plaintiffs suggest that this rock was used to manufacture coarse aggregate.  Plaintiffs allege that Federal purchased and used this coarse aggregate in its concrete mix.  Plaintiffs assert that the concrete sold by Federal is now susceptible to a certain defect called Alkaline Carbonate Reaction ("ACR") as a result of the alkali content of the coarse aggregate.  According to Plaintiffs, ACR either has caused or will cause damage to the concrete on their properties, including discoloration, cracking, and weakening.  Therefore, Plaintiffs request monetary relief to compensate them for: replacement costs of the affected concrete,

---

[1]Plaintiff James Adams of Princeton, Kentucky, claims he used Federal concrete in the construction of his garage and that the concrete is cracking.  Married Plaintiffs Wallace and Doris York, of Princeton, Kentucky, claim that they used Federal concrete in the construction of their driveway and that the concrete is cracking.  Married Plaintiffs Dean and Anna Ray, of Princeton, Kentucky, claim that they used Federal concrete in the construction of their home and that the concrete is cracking.

damage to the structures on their properties, diminution in value to their properties resulting from the known defect in the concrete, and decreased availability of equity loans based on the diminished value of the properties.  Plaintiffs also claim that the concrete materials at issue in this case do not meet the standards of Kentucky Building Code, set out by the American Society of Testing and Material in Section C 33-03.

In addition to their personal claims, Plaintiffs submit that members of the following Class will have similar claims and that the Class should be certified:

> All owners of structures, both commercial and residential, in the Commonwealth of Kentucky which were built with concrete supplied by Federal and containing coarse aggregate from the Princeton Quarry owned by Defendants Hanson Aggregates Midwest, Inc. and/or Rogers Group, Inc.

Plaintiffs specify a Subclass of:

> All owners of structures, both commercial and residential, in the Commonwealth of Kentucky which were built with concrete supplied by Federal and who purchased the concrete directly from Federal and containing coarse aggregate from the Princeton Quarry owned by Defendants Hanson Aggregates Midwest, Inc. and/or Rogers Group, Inc.

Plaintiffs exclude from the Class and Subclass:

> (1)  Defendants and/or any entity in which they have a controlling interest, and their legal representatives, officers, directors, assigns and successors;
>
> (2)  the judge to whom this case is assigned and any member of the judge's immediate family;
>
> (3)  all claims for personal injury or wrongful death; and
>
> (4)  all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs claim that over five hundred (500) qualifying class members have been identified.  Plaintiffs also calculate that between one thousand (1000) and fifteen hundred (1500) class members will eventually be identified, based on the amount of concrete sold by Federal between 1996 and 2000 and the average amount of concrete per sale by Federal.  According to

3

Plaintiffs, the suit is eminently suitable for class adjudication because they contend it involves one defective product with one defective component; thus, class adjudication would reduce litigation costs, avoid repetitive litigation, and would avoid conflicting outcomes.  In support of their claims, Plaintiffs have retained and deposed several experts in the field of concrete analysis and have had their own and some potential class members' concrete tested for the presence of ACR.  In particular, Plaintiffs claim that the following can be shown by common proof: the presence of elevated levels of alkali in the Princeton Quarry, the experts' determination that such alkalinity could cause ACR, any knowledge or admission by the Defendants that the coarse aggregate was susceptible to ACR, and any violation of the Kentucky Building Code by Defendants.  In their Reply, Plaintiffs concede that some issues[2] are not appropriate for class adjudication; they propose that these proceedings be bifurcated into a class adjudication of common issues and separate trials for individual plaintiffs or class members on other issues pursuant to Federal Rule of Civil Procedure 24(c)(4).

The Defendants point out relevant facts weighing against the certification of a class action.  Both Plaintiffs and Defendants inform the Court of other actions against Federal by would-be class members regarding the presence of ACR in the concrete.  Defendants also note that an examination of an individual petrographic core sample from each class member is necessary to determine whether ACR is present.  The Defendants may require separate proof from and assert separate defenses against each class member, including: that the class member must prove that they purchased concrete from Federal, the time of purchase for statute of

---

[2]Specifically, Plaintiffs concede that damages, presence of ACR, and whether a particular class member received concrete from Federal are individualized issues which cannot be resolved in class litigation.

limitations purposes, whether the class member has not properly cared for the concrete, and whether the coarse aggregate was used in the class member's concrete mix and the proportion to other ingredients in the mix.  Plaintiffs' experts state that concrete is not a homogeneous material and that generalizations about the different mixtures sold to each class member are not possible. Lastly, Defendants note that each class member will require a separate determination of damages should the Plaintiffs succeed in their claims.  This determination would require examination of the extent of the damage present and of the class member's treatment of the concrete which might contribute to the damage.  Also, whether the concrete at issue was used in a residence, foundation, driveway, sidewalk, or other structure is relevant to replacement and repair costs. According to Defendants, bifurcation of the trial into a class action and individual determinations of damages is inappropriate for this case.  Both causation and damages would be reserved for individual trials, and very few issues could be resolved in a class adjudication.

Plaintiffs note that Defendants, in some of their briefs, present arguments regarding the merits of Plaintiffs' case.  According to Plaintiffs, in the absence of a motion for summary judgment, the Court should not consider the strength of Plaintiffs' case at this stage of the proceedings and should only examine the propriety of trying this case as a class action.  While the Court does not determine whether it may or may not consider the merits of the case at this juncture, the Court avoids any considerations of the strength of Plaintiffs' claims in this Opinion as the Court may reach its conclusion on independent grounds.  The Court limits discussion of Plaintiffs' claims only to the extent that they are relevant to the propriety of a class action adjudication in this matter.

## STANDARD

Plaintiffs seek to certify this class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(4).  While the Court must conduct a rigorous examination of Plaintiff's request for class certification, the Court ultimately has discretion as to whether class certification is appropriate. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In making its determination, the Court must examine individually each prerequisite for certification and may consider evidence presented by both parties on the maintainability of the class action. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).  Plaintiffs bear the burden of demonstrating to the Court that all requirements for certification are met. *Am. Med. Sys.*, 75 F.3d at 1079.

"Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 335 (E.D. Ky. 2002) (citing *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976)).  The description must be "sufficiently definite [such] that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Wright, Miller, & Kane, *Federal Practice and Procedure*, § 1760, at 120-21 (2d ed. 1986).  The class definition must be precise, enabling the Court to practically and efficiently apply objective criteria to each proposed class member to determine whether they may participate in class litigation.  *See Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).  If a class is highly diverse and class membership is difficult to ascertain, the Court may decline to certify the class. *Gevedon*, 212 F.R.D. at 337.

Under Rule 23(a), plaintiffs seeking to certify a class must show that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of

6

the class, and (4) the representative parties will fairly and adequately protect
the interests of the class.
Fed. R. Civ. Pro. 23(a).

To satisfy the numerosity requirement, plaintiffs need not specify the exact number of class members, but must only show that the class is likely to be so numerous that joinder would be impracticable. *Noonan v. Indiana Gaming Co.*, 217 F.R.D. 392, 395 (E.D.Ky. 2003). *See also Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 130-31 (E.D. Ky. 1981). Practicability of joinder may depend on "the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined, and geographic dispersion of members," among other factors. *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). Joinder may be considered more practicable where all members of the class are from the same geographic area. *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Hawaii 1995)(citations omitted). *See also Sanft v. Winnebago Indus.*, 214 F.R.D. 514, 523 (N.D. Iowa 2003); *Universal Calvary Church v. City of New York*, 177 F.R.D. 181, 183 (S.D.N.Y. 1998) (joinder of 217 plaintiffs not impracticable when all resided in one of three New York counties); *Rockey v. Courtesy Motors*, 199 F.R.D. 578, 583 (W.D. Mich. 2001). While there is no set number of members at which joinder becomes impracticable, a class as small as thirty-five members has been held to raise the presumption that joinder is impracticable. *Am. Med. Sys.*, 75 F.3d at 1076.

In determining whether the Plaintiffs have shown commonality of claims of class members, the Court first notes that a further requirement of Plaintiffs' case, predominance under Federal Rule of Civil Procedure 23(b)(3), subsumes the examination of commonality. *See Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). However, to satisfy the lesser commonality requirement, plaintiffs must only show that at least one issue of law or fact is shared among the plaintiffs and the

class members; the class members need not all have identical claims. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).   "The threshold of 'commonality' is not high." *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986).   The Plaintiffs must not only show a common issue, but also show that the resolution of that issue will advance the litigation. *Gevedon*, 212 F.R.D. at 338 (quoting *Sprague v. Gen. Motors, Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).   Courts have refused to find commonality where resolution of common issues depends primarily on factual determinations different for each class member. *Noonan*, 217 F.R.D. at 396.   However, a finding of commonality requires only that issue exists which can be resolved with common evidence; the existence of other important issues which must be determined individually affects only the predominance determination, not causation. *Isabel v. Velsicol Chem. Corp.*, No. 04-2297DV, 2006 U.S. Dist. LEXIS 42279, at * 17 (W.D.Tenn. June 20, 2006).

Next, Plaintiffs must show typicality, or that the Plaintiffs' claims are similar to those of the class members in general.  The claims of the class are limited to those made by the Plaintiffs so that, through the proof of their own claims, Plaintiffs also advance the cases of the class members. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980); *Am. Med. Sys.*, 75 F.3d at 1082. Consideration of typicality overlaps with the Court's commonality analysis. *Mitchell v. Kentucky Dep't of Corr.*, No. 98-6548, 2000 U.S. App. LEXIS 26160, at *12 (6th Cir. Oct. 12, 2000) (quoting *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998) and *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)) ("We have recognized that commonality and typicality requirements 'tend to merge.'").  The test for typicality "is not demanding." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (citing *Forbosh*, 994 F.2d at 1106).  Individualized

8

calculation of damages for class members need not defeat a finding of typicality. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, those issues may be reserved for individual treatment with the question of liability tried as a class action.").   However, individual issues regarding the Plaintiffs' claims, such as disputes over statutes of limitations or other affirmative defenses, may preclude a finding a typicality if they "are 'likely to usurp a significant portion of the litigant's time and energy,' and there is a danger that the absent class member will suffer if their representative is preoccupied with defenses unique to it." *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 484 (S.D.Ohio 2004) (quoting *Frietsch v. Refco, Inc.*, No. 92 C 6844, 1994 U.S. Dist. LEXIS 312, at *3 (N.D. Ill. Jan 13, 1994) and *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334-35 (N.D. Ill. 1982)). *See also Noonan*, 217 F.R.D. at 397; *Marquis v. Tecumseh Prods. Co.,* 206 F.R.D. 132, 161 (E.D. Mich. 2002).   If a named Plaintiff's claim fails or does not necessarily prove the elements of claims of other class members, the typicality requirement is not satisfied. *Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir. 2002)(citing *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1346 (11th Cir. 2001) and *Prado-Steinman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). While Plaintiffs may represent class members who are at risk for damage but have not yet sustained damage, the conflict between currently injured plaintiffs and those who are merely at risk of injury discourages findings of both typicality and adequacy of representation. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004); *Georgine v. Amchem Prods.*, 83 F.3d 610, 630-32 (3rd Cir. 1996); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 420 (E.D.La. 1997).

Plaintiffs also have the burden to show that they can adequately represent the claims of the class.  The adequacy of representation is essential to due process because the final judgment in a

class action is binding on all class members. *Am. Med. Sys.*, 75 F.3d at 1083. Representation is adequate only if (1) the representative has common interests with unnamed members of the class, and (2) it appears that the representatives will vigorously prosecute the interest of the class through qualified counsel. *Id.* Accordingly, an adequacy analysis overlaps with considerations of typicality. *Id. See also Georgine*, 83 F.3d at 632. Plaintiffs must not only establish their own adequacy, but that their counsel is qualified and experienced. *Eddleman v. Jefferson County Dep't of Corr.*, No. 95-5394, 1996 U.S. App. LEXIS 25298, at * 14 (6th Cir. Aug. 29, 1996).

If Plaintiffs show that their proposed class meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, they must meet the additional burden of showing that the class complies with the standards set out in Federal Rule of Civil Procedure 23(b)(3). Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3). The requirement of predominance encompasses the Rule 23(a) requirement of commonality, and imposes a more stringent standard. *Am. Med. Sys.*, 75 F.3d at 1084. In order to satisfy the predominance test, "common issues must constitute a significant part of the individual cases." *Jenkins*, 782 F.2d at 472. Courts have found that individual issues of damages need not defeat predominance. *See, e.g., Sterling*, 1981 U.S. Dist. LEXIS 18472. However, significant individual issues of causation and affirmative defenses, combined with individual issues of damages, may defeat any claims of predominance of common issues. *Am. Med. Sys.*, 75 F.3d at 1084. *See also Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 535, 546 (W.D. Wisc. 1998). Where the individualized issues will destroy the utility of a class adjudication and necessitate mini-trials to determine issues relevant to each class

10

member, common issues do not predominate. *See Dahlgren's Nursery, Inc. v. E.I. duPont de Nemours & Co.*, No. 91-8709-CIV-HURLEY, 1994 U.S. Dist. LEXIS 17918, at * 27 (S.D. Fla. June 9, 1994) (citing *Partain v. First Nat'l Bank of Montgomery*, 59 F.R.D. 56, 59 (M.D. Ala. 1973)). Combined individual issues of proof regarding liability, causation, defenses, and damages may also defeat predominance. *Am. Med. Sys.,* 75 F.3d at 1081; *Gevedon*, 212 F.R.D. at 397; *Sprague*, 133 F.3d at 397.  In particular, serious individual issues of causation make a case unsuitable for class adjudication. *See Am. Med. Sys.,* 75 F.3d at 1080-81.  *See also Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 450-52 (D.C. Pa. 2000); *Kohn v. Am. Hous. Found., Inc.*, 178 F.R.D. 536, 542 (D.C. Colo. 1998).

In considering whether a class action is superior method of adjudicating the claims at issue, the Court must examine four factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. Pro. 23 (b)(3)

Superiority is demonstrated where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  The first factor balances the economic efficiencies of combining discovery for all class members with the disparate interests of class members with claims of various values and types. *See Castano v. The Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Johns v. DeLeonardis*, 145 F.R.D. 480, 485 (N.D. Ill. 1992).  The second factor considers whether there is so much

litigation already in progress that the consolidation of class members' claims into a class adjudication would be unproductive. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 640 (D.S.C. 1992). In analyzing the third factor, the Court must consider whether certification would: (1) lead to duplicative results or (2) place the controversy in an inconvenient forum. *See* Wright & Miller, § 1780, at 572-73. The last factor, manageability, encompasses a "whole range of practical problems that may render the class action inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

Lastly, Plaintiff suggests that any obstacles to certifying a class action because of the existence of individualized issues can be overcome through bifurcating the action as authorized by Federal Rule of Civil Procedure 23(c)(4). The Court may separate the case into a class adjudication of common issues and individual trials of issues which vary among class members, particularly damages. *See, e.g., Olden v. LaFarge*, 383 F.3d 495, 509(6th Cir. 2004)**;** *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003); *Sterling*, 855 F.2d at 1197; *Isabel*, 2006 U.S. Dist. LEXIS 42279 at *30-31; *In re Tri-State Crematory Litig*, 215 F.R.D. 660, 699-700 (N.D. Ga. 2003); *TBK Partners v. Shaw*, 1983 U.S. Dist. LEXIS 12752 at *7-8 (W.D. Ky. Oct. 14, 1983). While some individual issues may be bifurcated into separate trials, "Rule 23(c)(4) may not be used to circumvent the predominance requirement of Rule 23(b)(3)." *Snow v. Atofina Chems., Inc.*, No. 01-72648, 2003 U.S. Dist. LEXIS 27295 (E.D. Mich. Mar. 31, 2003).

12

# DISCUSSION

Defendants first challenge that Plaintiffs' class is not sufficiently defined to justify certification of the class.  In response, Plaintiffs claim that members of the class may be easily identified to the Court through business records and receipts.  Defendants do not suggest that the Court will be unable to determine which persons are members of the class.  Instead, Defendants claim that Plaintiffs' proposed class includes many members which would not have viable claims against any of the Defendants.  In particular, Defendants note that the Class or Subclass would potentially contain members who purchased concrete outside the region where Princeton Quarry aggregate was used in concrete, individuals who purchased concrete and saw the effects of ACR so long ago that the applicable statute of limitations would bar their claims, individuals who may never have ACR damage to their concrete, and secondary buyers of already damaged property who have already recouped the value of the damage caused by any ACR through a lower purchase price.  Many of the proposed class members would not even have a contractual relationship with the Defendants, while others would have claims barred by warranty.  While Defendants urge that the Class defined by Plaintiffs is overbroad, they do not demonstrate that it would be difficult for the Court to identify members of the Plaintiff's proposed Class and Subclass.  Therefore, the Court finds that the Class is sufficiently defined.

Since Plaintiffs have sufficiently defined a class, the Court analyzes whether the Plaintiffs have met their burdens of showing numerosity, commonality, typicality, and adequacy as required by Rule 23(a).  Plaintiffs contend that they have met the requirement for numerosity because the five hundred class members already identified are too numerous to make joinder

practicable.  Plaintiffs further argue that, based on their calculations of concrete sold since 1996

and the average size of an order or concrete, between one thousand and fifteen hundred class

members might be located, making joinder even more cumbersome.  According to Plaintiffs, the

sheer number of class members would make the service of process required for joinder onerous,

while identifying and contacting class members through class mailings would be simple because

of the availability of business records.  Defendants counter that Plaintiffs incorrectly estimate the

numbers of class members.  By including persons whose claims may be time-barred and persons

who could not have received concrete manufactured with coarse aggregate from the Princeton

Quarry.  Defendants also argue that the ultimate number of class members can only be

determined after an individual petrographic analysis of a sample of each prospective class

members' concrete by an expert to determine whether the class member's concrete has reactive

coarse aggregate and a potential for ACR.  According to Defendants, these factors might

dramatically decrease Plaintiffs' projected estimates of class size.  Lastly, Defendants contend

that joinder is indeed practicable in this case.  Per the Plaintiffs' class definition, all class

members would be located in a small geographic area where concrete from the Princeton

Quarry's coarse aggregate was sold as a component of concrete and all would be Kentucky

residents.  Therefore, joinder would be more practical than if the potential class members were

widely dispersed.  The Court determines that numerosity is satisfied, despite the uncertainties

Defendants point out.  It is undisputed that many people bought concrete from Federal during the

time it purchased materials derived from the Princeton Quarry.  While it is possible that not all of

these consumers would succeed in class related claims, they all might assert them.  Joinder of a

class with five hundred potential members, even grouped in one area of the state, would be

difficult.

The Court next considers whether the Plaintiffs have shown commonality. Plaintiffs suggest multiple issues common to class members, including: whether all class members have concrete made from Princeton Quarry aggregate, whether concrete from Princeton Quarry is susceptible to ACR, whether and when Federal purchased and used coarse aggregate in its concrete, and the effect of using ACR susceptible coarse aggregate in concrete mixtures. Plaintiffs also suggest that a finding of commonality is warranted because all class members would request the same type of economic damages. Defendants argue Plaintiffs have presented no common issue of fact meriting a finding of commonality. Defendants correctly state that Plaintiffs have included only class members who purchased concrete from Federal containing aggregate from the Princeton Quarry; therefore, whether a Plaintiff has purchased concrete from Defendants is not at issue. Defendants also point out that, while class members all want economic and not injunctive damages, some class members would request only replacement costs of the concrete and others additionally want structural repair costs. While Defendants might admit that issues exist as to whether the aggregate from Princeton Quarry is susceptible to ACR and what effect this would have on concrete purchased by class members, Defendants note that the resolution of any common issue must significantly advance the litigation to satisfy the requirement of commonality. According to Defendants, even if Plaintiffs could show that the presence of reactive coarse aggregate makes concrete susceptible to ACR, the litigation would not be significantly advanced because individual showings of symptoms of ACR, damages, and affirmative defenses such as statutes of limitations and comparative negligence would still be necessary. Defendants further argue that, since batches of concrete are mixed separately for each

15

job, a single analysis cannot determine whether all the class members' batches of concrete were defective.  Overall, Defendants propose that Plaintiffs confuse common types of proof, such as petrographic analysis and damage calculations done for each individual class member, with common proof shown for all class members.  The Court notes that the standard for commonality is low, just one issue that would advance litigation which may be determined through common investigation or litigation.  In this case, the testimony of many experts and investigation of the conditions at Princeton Quarry would resolve the issue of the reactivity of Princeton Quarry aggregate and its effect as a component of concrete in any mixture, as well as what constitutes ACR for the purposes of this lawsuit.  This research, which would determine a significant element of all claims common to the class members, is enough to satisfy the low standard of commonality.

Next, Plaintiffs must prove that their claims are typical of the claims of other class members.  Plaintiffs show that, like the class members, they received concrete from Federal which contained coarse aggregate from the Princeton Quarry.  Plaintiffs further show that they have sustained damage to their concrete and that expert analysis suggests the damage resulted from ACR.  As with the other class members, Plaintiffs must show individually the damages they claim and would necessarily need to individually defend against any statutes of limitation, comparative negligence claims, or other defenses asserted against them.  Defendants argue that Plaintiffs are not typical of the members of the proposed class and have handpicked atypical samples of concrete which will particularly support their case.  Even Plaintiffs' experts agree that generalizations about concrete often lead to inaccuracies and that each class member would have a different mixture of concrete.  Therefore, according to Defendants, unless Plaintiffs and other

16

class members had identical concrete compositions, the factual findings for Plaintiffs would not necessarily be similar to those for other class members.  Further, Defendants claim that Plaintiffs' contracts and applicable warranties may subject them to substantially different claims and defenses than other class members, making Plaintiffs' claims atypical of the class. Defendants also suggest that named Plaintiffs' claims may fail for technical reasons, such as statutes of limitations.  In particular, Defendants claim, and Plaintiffs do not contest, that Plaintiff Adams did not pay the full price for his concrete because of a bankruptcy filing.  This aberration could cause Adams's claim to fail and certainly makes it atypical of the claims of the class.  Lastly, Defendants point out that Plaintiffs' own experts don't agree that ACR is evident in the petrographic samples of named Plaintiffs' concrete analyzed.  If Plaintiffs' claims fail, they cannot be typical of a certifiable class for continued litigation.  In considering the typicality of Plaintiffs' claims, the Court will not determine the outcome of Plaintiffs' claims on the merits and acknowledges that the requisite level of proof to be shown by Plaintiffs is low.  While Plaintiffs' claims may vary from class members' claims, it is clear that the same types of issues and proof will be present in Plaintiffs' and class members' claims.  Though it might have defeated Plaintiffs' argument for certification if Defendants had successfully moved for dismissal or summary judgment on all of named Plaintiffs' claims, no persuasive argument is before the Court that all the named Plaintiffs' claims against all the Defendants fail as a matter of law. Therefore, the Court holds that Plaintiffs have satisfied the low standard of typicality.

To fully satisfy Rule 23(a), Plaintiffs must also show that they provide adequate representation for the class.  While Plaintiffs have the burden of persuasion, adequacy is presumed in absence of evidence to the contrary.  In support of their case, Plaintiffs state that

they have an interest in recovering damages for severely damaged concrete on their property and that they have employed representation extensively experienced in class actions and complex litigation.  Furthermore, Plaintiffs present their experts as adequate to show all class members' claims of ACR.  Defendants counter that Plaintiffs' experts admit that ACR is difficult for them to identify with any accuracy, and often have trouble distinguishing ACR from a separate defect in concrete, alkali silica reaction ("ASR").  The consideration of adequacy also overlaps with considerations of typicality and commonality.    Thus, because Plaintiffs may have claims which are less valuable than claims of other class members, their adequacy to represent the interests of high value claim class holders might be impaired.  On the whole, however, the Court determines that Plaintiffs may adequately represent the class.  Plaintiffs' experts are not inexperienced in concrete analysis, and any high claim class members are still afforded the opportunity to opt-out of the class.

Since Plaintiffs have satisfied the requirements of Rule 23(a), the Court examines whether the Plaintiffs' proposed class fulfills the more stringent standards set out in Rule 23(b)(3).  First, Plaintiffs must show that common issues predominate over individual issues which must be proven by the class.  In arguing that common issues predominate, Plaintiffs echo their argument for commonality.  In establishing commonality, Plaintiffs must only show that one common issue may be established through class adjudication; to show predominance, Plaintiffs must further convince the Court that commonly decided issues will predominate or comprise a majority of the litigation.  If individual issues overwhelm commonly decided issues, predominance cannot be established.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).  While Plaintiffs concede that damages is an issue which must be decided on a case-by-

18

case basis, they claim that issues of liability predominate.  Essentially, Plaintiffs claim that the common determination of reactivity of aggregate mined from the Princeton Quarry and the potential of the aggregate to cause ACR in concrete mixtures predominates over all other issues in the case.  Defendants counter that issues predominate regarding the existence of injury to class members, the causation of any damage to class members' concrete, damages, and applicability of class members' warranties.  Plaintiffs note that predominance is a qualitative, not a quantitative, analysis; the Court should balance the importance of the common and individual issues instead of comparing the numbers of common and individual issues.  Newburg on Class Action, § 4.25, at 172.  Therefore, the existence of individual issues of damages does not necessarily overcome a finding of predominance.  Defendants, however, assert that where a product, such as the concrete in this case, is not fungible and homogeneous, common issues of products liability and defectiveness may not be common; the individual causation analyses may overshadow any common issues.  *McBride v. Galaxy Carpet Mills, Inc.*, 920 F.Supp. 1278, 1281 (N.D. Ga. 1995).

The Court agrees with Defendants that predominance of common issues does not exist in this case.  Much of the proceedings would be dedicated to the individual determination of whether ACR exists or may develop in each of the numerous class members' structures.  If ACR is established, the Court must then individually determine whether the coarse aggregate from Princeton Quarry caused ACR to develop or whether other components of the concrete or outside sources caused the damage.  Even if liability is established, individual damage analyses must be performed, involving an examination of each class member's use of the concrete, any damages caused to the structures around the concrete, and the cost to replace the concrete.  Additionally,

19

each individual class members' warranty agreement and statute of limitations must be examined as an affirmative defense.  Lastly, the Court would need to conduct proceedings to determine whether any class members' comparative negligence contributed to the damage in the concrete. These individual proceedings would certainly dominate the Court's time in examining this case, while determination of the reactivity of Princeton Quarry's aggregate would take a relatively small amount of time.

For the sake of completeness, the Court also examines whether Plaintiffs could have shown that a class action is the superior method of adjudicating Plaintiffs' and class members' claims.  In doing so, the Court must balance the interest of class members in litigating collectively, the extent of any litigation in progress, the appropriateness of the forum for collective adjudication, and the efficiencies and difficulties of a class action.   First, the Court considers the interest of class members in individually litigating their claims.  The claims of class members are extremely disparate, ranging from members with no discernable damages to a few class members with extremely large damages.  While a few members might benefit from opting-out of the class and choosing individual control of their claims, the vast majority of class members would find it more economically efficient to benefit from the combined expert opinions available in a class action.  Even those who would economically benefit from the pooled resources in a class action might be disadvantaged if they were damaged by other actionable defects in their concrete.  As Plaintiffs only allege injury caused by ACR, class members may waive claims of other defects against the Defendants.  Second, the Court must consider the extent of litigation already commenced by class members.  Plaintiffs and Defendants agree that very few suits have been initiated.  While this shows that individual suits are feasible, it does not persuade

that Court that most class members are opting to pursue individual litigation.  Next, the Court examines the propriety of this forum for the class action.  This Court is near the area in which the allegedly defective concrete was sold.  Plaintiffs have further limited the class to residents of Kentucky, the seat of this Court.  Defendants have not contested that this Court is a convenient platform for litigation of class issues.  Last, the Court must generally weigh the efficiencies and difficulties of adjudicating this matter as a class action.  Here, again, the Plaintiff's bid for class certification fails.  A combined adjudication of class members' claims would involve individual determinations of causation, liability, warranties, statutes of limitations, and damages, necessitating miniature trials for each class member on almost every issue.

Plaintiffs suggest bifurcating the trial into a class litigation of common issues and individual trials of other issues pursuant to Rule 23(c)(4).  The Court, however, holds that this case is not proper for partial class adjudication.  The Plaintiffs must still satisfy that the issues to be determined by class adjudication predominate over the claims as a whole, including the claims in the separate individual issue trials.  Since Plaintiffs have failed to satisfy the requirement of predominance, bifurcation of the trial is not warranted here.

## CONCLUSION

Plaintiff's Motion to Certify a Class is hereby DENIED.  An appropriate Order shall issue.